**HOLLOWAY CONSTRUCTION,**
**Plaintiff-Appellant,**

v.

**WAGE APPEALS BOARD, UNITED STATES DEPARTMENT OF LABOR, Defendant-Appellee.**

**No. 86–1847.**

United States Court of Appeals,
Sixth Circuit.

Argued June 18, 1987.
Decided Aug. 7, 1987.

Irwin M. Alterman, Richard Bisio (argued), Hyman, Gurwin, Nachman, Fried-

man & Winkelman, Southfield, Mich., for plaintiff-appellant.

Peter A. Caplan, Asst. U.S. Atty. (argued), Detroit, Mich., for defendant-appellee.

Before KENNEDY and MILBURN, Circuit Judges, and CONTIE, Senior Circuit Judge.

CORNELIA G. KENNEDY, Circuit Judge.

Holloway Construction ("appellant") appeals the determination of the Department of Labor ("Department") affirmed by the Wage Appeals Board and the District Court that the Davis-Bacon Act, 40 U.S.C. §§ 276a–276a–5 (1982), ("Act"), required appellant to pay its employees cash fringe benefit payments in addition to time and one-half for each hour of overtime worked. The District Court held that appellant owed its employees back overtime compensation for work on a federally financed highway project covered by the Act. We affirm.

The contract between appellant and the Commonwealth of Pennsylvania for this project included the Department's determinations of prevailing wages to be paid employees working on the project. This determination included a basic hourly rate and an hourly cash fringe benefit for each worker classification. The contract also required appellant to pay overtime compensation at one and one-half times the basic hourly rate of pay pursuant to the Contract Work Hours and Safety Standards Act, 40 U.S.C. §§ 327–333 (1982) ("CWHSSA"). Appellant paid its employees overtime at the rate of one and one-half times the basic hourly rate, but did not pay fringe benefits for each hour of overtime. The Depart-

ment concluded that appellant violated the Act and owed its employees $181,574.13 in back wages representing cash fringe benefits for overtime hours.

The Wage Appeals Board declined to review the Department's determination, reaffirming its decision in *G & C Enterprises, Inc.*, WAB Case No. 83–7 (Feb. 8, 1984). Appellant sought judicial review of the Department's ruling pursuant to 5 U.S.C. § 702. The District Court granted the Department's motion for summary judgment. It concluded that the Act permitted the Department's conclusion and that nothing in the legislative history revealed a congressional intent to exclude fringe benefits from total overtime compensation. Appellant appealed that decision.

The Act establishes wage standards for construction workers hired by government contractors. In enacting the Act, Congress recognized that local contractors needed protection from unfair competition from outside contractors who were securing government contracts because they based their bids on wage amounts lower than those paid in the locality. S.Rep. No. 963, 88th Cong., 2d Sess. 2, *reprinted in* 1964 U.S.Code Cong. & Admin.News 2339, 2340 ("Senate Report"). Section 276a(a) of the Act[1] requires contractors or subcontractors performing a covered contract to pay wages at rates that the Department determines to be prevailing for similar projects in the area. The Act was amended in 1964 to permit the Department to include fringe benefits in its determination of prevailing wages. By amending the Act, Congress recognized the great change in the concept of earnings since the Act was enacted in

---

1. Section 276a(a) provides in pertinent part:

 The advertised specifications for every contract in excess of $2000 to which the United States or the District of Columbia is a party, for construction ... of public buildings ... shall contain a provision stating the minimum wages to be paid various classes of laborers ... which shall be based upon the wages that will be determined by the Secretary of Labor to be prevailing for the corresponding classes of laborers ... employed on projects of a character similar to the contract work in the

 city ... in which the work is to be performed ...; and every contract based upon these specifications shall contain a stipulation that the contractor ... shall pay all ... laborers ... the full amounts accrued at time of payment, computed at wage rates not less than those stated in the advertised specifications, regardless of any contractual relationship which may be alleged to exist between the contractor or subcontractor and such laborers....

 40 U.S.C. § 276a(a).

1931.[2] Section 276a(b) defines "wages," "wage rates," and "prevailing wages" as,

> (1) the basic hourly rate of pay; and
> (2) the amount of—
>> (A) the rate of contribution irrevocably made by a contractor or subcontractor to a trustee or to a third person pursuant to a fund, plan, or program; and
>> (B) the rate of costs to the contractor or subcontractor which may be reasonably anticipated in providing benefits to laborers and mechanics pursuant to an enforcible [sic] commitment to carry out a financially responsible plan or program ...,
>
> for medical or hospital care, pensions ... or for other bona fide fringe benefits....

40 U.S.C. § 276a(b). Thus, the Act defines "wages," "wage rates," and "prevailing wages" as constituting a per hour cash payment *and* a fringe benefit package. Section 276a(b) also permits an employer to fulfill the fringe benefit requirement by making contributions to a trust fund, by bearing the cost of a benefit program, or by paying the equivalent amount to the employee in cash. Appellant chose to pay its employees working on the project cash fringe benefits.

The overtime provision of the Act provides in pertinent part:

> In determining the overtime pay to which the laborer or mechanic is entitled under any Federal law, his regular or basic hourly rate of pay (or other alternative rate upon which premium rate of overtime compensation is computed) shall be deemed to be the rate computed under paragraph (1)....

40 U.S.C. 276a(b). Appellant contends that the overtime provision of the Act clearly demonstrates congressional intent to exclude fringe benefits from the determination of the overall rate of overtime compensation. According to appellant, the overtime provision's reference to paragraph (1) eliminates fringe benefits from the calculation of overtime compensation under all federal law including the Act because paragraph (1) states that "wages," "wage rates," and "prevailing wages" include the basic hourly rate of pay. Had Congress intended otherwise, appellant believes that the overtime provision would have referred to both paragraphs (1) and (2).

Appellant also contends that the policy behind the Act supports its interpretation. Appellant notes that fringe benefits are normally not part of hourly compensation because these benefits are available to employees by virtue of their status as employees, not a function of the wage scale or the number of hours worked. Appellant finally argues that the Department's interpretation furthers the disparity Congress sought to eliminate with the overtime provision. Appellant points out that under the Department's interpretation it must pay its employees more for each hour of overtime than it would had it chosen to pay health care benefits directly instead of giving its employees cash for the fringes. Appellant further contends that the legislative history contains no evidence that Congress intended to include fringe benefits as part of overtime compensation.

The government contends that the plain language of the Act supports its conclusion that appellant must pay fringe benefits for each overtime hour. It argues that section 276a(a) of the Act provides that employees working on projects covered by the Act are entitled to "wage rates not less than those stated in the advertised specifications." Section 276a(b) defines the term "wage rates" as the basic hourly rate of pay *plus* the cost of prevailing fringe benefits or their cash equivalent. Thus, according to

---

**2.** The House Report accompanying the bill proposing to include fringe benefits as part of the "prevailing wage" under the Act provides:

> It has become increasingly apparent that if the Davis-Bacon Act is to continue to accomplish its purpose, prevailing wage determinations issued pursuant to the act must be enlarged to include fringe benefits. The act was founded on the sound principle of public policy that the Federal Government should not be a party to the destruction of prevailing wage practices and customs in a locality. Unless the law is amended to provide for the inclusion of fringe benefits in wage determinations, prevailing wage practices and customs will not be reflected in these determinations.

H.R.Rep. No. 308, 88th Cong., 1st Sess. (1963) ("House Report").

the government, employees working on covered projects must be paid prevailing fringe benefits or their cash equivalent for each hour worked regardless of whether the hour is an overtime hour.

The government also argues that the overtime provision demonstrates that Congress intended to exclude fringe benefits from the calculation of the overtime *premium,* which is one and one-half times the basic hourly rate of pay as provided for in paragraph (1) and the CWHSSA, not the overall rate of overtime compensation. According to the government, Congress excluded fringe benefits from the calculation of the overtime premium to avoid penalizing employers who pay fringe benefits in cash: the Act permits employers to exclude the portion of an hourly wage that represents fringe benefits before calculating the overtime premium. Once the overtime premium is determined, however, the government asserts that fringe benefits must still be paid for each hour of overtime.[3]

Finally, the government argues that the policy behind the Act supports its interpretation. It notes that appellant's interpretation puts it at a competitive advantage because it would pay less for overtime hours than other employers who, instead of paying fringe benefits in cash, contribute money to a fund for each hour of overtime in addition to paying their employees the overtime premium. The government contends that many collective bargaining agreements in the construction industry require employers to contribute to such a fund.

The government also relies on *G & C Enterprises, Inc. v. Wage Appeals Board,* 619 F.Supp. 1430 (D.N.J.), *aff'd mem.,* 782 F.2d 1028 (3d Cir.1985). There, the District Court, noting that nothing on the face of the Act prohibited the government's interpretation, construed the overtime provision in the Act as requiring fringe benefits to be excluded from the calculation of the overtime premium but concluded that fringe benefit payments should be made for each hour worked. 619 F.Supp. at 1433. The court also noted that the language of the CWHSSA permits this interpretation. The CWHSSA was passed before the Act and provides that overtime wages shall *include* compensation at a rate *not less than* one and one-half time the basic rate of pay. The CWHSSA does not state that the one and one-half overtime rate shall be the *exclusive* amount of wages for overtime work. The court believed that had Congress intended to limit fringe benefits to straight time it would have done so in the Act. The court also stated that the legislative history of the Act supported the view that fringe benefits should be included when determining prevailing wages, including overtime wages.

We believe that the Department's interpretation of the Act is correct.[4] Section 276a(a) requires employers working on covered projects to pay prevailing wage rates. As discussed above, section 276a(b) defines the term "wage rates," "wages," and "prevailing wages" as a basic hourly rate *plus* the cost of fringe benefits. The Act does not distinguish between overtime and non-overtime hours; it does not reduce the prevailing wage to overtime hours. Therefore, the Act provides that the prevailing wages for each overtime hour includes a basic hourly rate and a fringe benefit component.

The legislative history and the policy behind the Act support this interpretation. The House Report accompanying the proposed fringe benefit amendment states that for the Act to accomplish its purpose "prevailing wage determinations ... must be enlarged to include fringe benefits." House Report, at 3. In addition, this Report notes that "[u]nless the law is amended to provide for the inclusion of fringe

---

3. The government also contends that the parenthetical phrase in the overtime provision supports its position. This phrase refers to an alternative rate upon which a *premium* rate of overtime compensation may be computed.

4. We also note that "[a]n agency's construction of a statute it is charged with enforcing is entitled to deference if it is reasonable and not in conflict with the expressed intent of Congress." *United States v. Riverside Bayview Homes, Inc.,* 474 U.S. 121, 131, 106 S.Ct. 455, 461, 88 L.Ed.2d 419 (1985).

benefits in wage determinations, prevailing wage practices and customs will not be reflected in these determinations." *Id.* The Senate Report demonstrates a similar intent. It provides:

There are many localities throughout the country in which the great majority of contractors provide fringe benefits is addition to the cash wages paid to their employees. As we have indicated, these *fringe benefits clearly constitute a form of wages.* Therefore, *if they are not included in the prevailing wage determinations, only a part of the compensation for employment is reflected.*

Senate Report, at 3–4, 1964 U.S.Code Cong. & Admin.News 2339 (emphasis added).

The language of the overtime provision supports the government's interpretation that Congress intended to exclude fringe benefits from the calculation of the overtime premium, not the overall rate of overtime compensation. The overtime provision states, "[i]n determining the overtime *pay* [the worker's] *regular or basic hourly rate of pay* ... shall be deemed to be the rate computed under paragraph (1)...." 40 U.S.C. § 276a(b) (emphasis added). Paragraph (1) refers to the basic hourly rate of pay. Thus, the overtime provision determines only the basic rate of overtime pay, it does not determine the overall rate of overtime compensation.[5]

Accordingly, the judgment of the District Court is AFFIRMED.

---

**5.** The Senate Report states that the overtime provision is intended to permit employers who pay fringe benefits in cash to exclude the portion of an hourly wage that represents fringe benefits before calculating the overtime premium.