# IN THE SUPREME COURT OF TENNESSEE
November 4, 2020 Session[1]

## ELVIS PRESLEY ENTERPRISES, INC., ET AL. v. CITY OF MEMPHIS, ET AL.

### Appeal by Permission from the Court of Appeals
### Chancery Court for Shelby County
### No. CH-18-0972    Jim Kyle, Chancellor

─────────────────────────────

### No. W2019-00299-SC-R11-CV

─────────────────────────────

The appellants filed the instant action seeking a declaratory judgment concerning the rights and obligations of the parties under a 2001 contract. The contract, to which the three appellees were parties, concerns the governance of the FedEx Forum in Memphis, Tennessee. In a previously filed action, the appellants sought similar relief, but the trial court dismissed the case for failure to exhaust administrative remedies. In the instant case, however, the trial court granted the appellees' motions under Tennessee Rule of Civil Procedure 12.02 to dismiss the complaint based on the court's conclusion that the appellants lacked standing. The Court of Appeals affirmed the dismissal but for a different reason. The intermediate appellate court instead concluded that dismissal was appropriate because the complaint was barred by the doctrine of res judicata and, as such, declined to address the standing issue. After thorough review, we conclude that the Court of Appeals' decision was erroneous because an essential element of the res judicata doctrine—an underlying judgment that was final and on the merits—has not been established. Accordingly, we reverse the judgment of the Court of Appeals and remand for consideration of whether the trial court properly dismissed the complaint based on the doctrine of standing.

### Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Reversed; Case Remanded to the Court of Appeals

ROGER A. PAGE, J., delivered the opinion of the Court, in which JEFFREY S. BIVINS, C.J., and CORNELIA A. CLARK, SHARON G. LEE, and HOLLY KIRBY, JJ., joined.

─────────────────────────────

[1] We heard oral argument through videoconference under this Court's emergency orders restricting court proceedings because of the COVID-19 pandemic.

Clarence A. Wilbon, and J. Bennett Fox, Jr., Memphis, Tennessee, for the appellants, Guesthouse at Graceland, LLC, Elvis Presley Enterprises, Inc., and EPPF, LLC.

Jonathan P. Lakey, and John J. Cook, Memphis, Tennessee, for the appellee, City of Memphis.

John Marshall Jones, and Bruce D. Brooke, Memphis, Tennessee, for the appellee, Shelby County, Tennessee.

David Wade, Clayton C. Purdom, and Rebecca K. Hinds, Memphis, Tennessee, for the appellee, Memphis Basketball, LLC.

## OPINION

### I. FACTUAL & PROCEDURAL BACKGROUND

This case involves a dispute over a proposal to build a 6,200-seat theater/arena in Memphis, Tennessee. The appellants are Elvis Presley Enterprises, Inc., EPPF, LLC, and Guesthouse at Graceland, LLC (collectively, "EPE"). The appellees are the City of Memphis, Shelby County, Tennessee, and Memphis Basketball, LLC (collectively, "Appellees").

Though not a party to this action, another relevant entity—an industrial development corporation—is Economic Development Growth Engine for Memphis and Shelby County ("EDGE"). EDGE is a Tennessee nonprofit corporation that, among other things, considers applications for its Tax Increment Financing ("TIF") program to promote industrial development. If EDGE's Industrial Development Board votes to do so, EDGE recommends applications for TIF to the Shelby County Commission and Memphis City Council for final approval.[2] Rather than providing direct funding, the TIF program allows developers to share in increased property tax revenues to be received from the surrounding area of the developer's project.

In 2001, prior to the events leading to the present dispute, Memphis Basketball entered into an agreement with the City and the County regarding the construction and use of the FedEx Forum and the relocation of the Grizzlies to Memphis ("Arena Agreement"

---

[2] Pursuant to Tennessee Code Annotated section 9-23-108, TIF funding is also subject to approval by the State of Tennessee, specifically the Comptroller and the Commissioner of Economic and Community Development.

or "Agreement").[3] Under the Agreement, Memphis Basketball must pay rent to the City and County and is responsible for covering costs, expenses, and operating losses incurred in the operation of the FedEx Forum. Pertinent to this case, the Arena Agreement restricts the City from providing tax incentives or other benefits for facilities that would compete with the FedEx Forum. Specifically, this "Non-Participation Provision" provides:

> Non-Participation. During the Term, neither CITY/COUNTY nor any CITY/COUNTY Affiliate shall, without the prior written consent of [Memphis Basketball], design, develop, construct or otherwise fund, provide economic or tax benefits or incentives to, or materially participate in the design, development, construction or financing of . . . any new Competing Facility; provided, however, the foregoing provisions shall not be interpreted to prohibit transactions and activities normally and/or routinely engaged in by the (x) planning, building, permitting and engineering departments of CITY/COUNTY in the ordinary course of reviewing and/or approving projects submitted by private developers, or (y) CITY/COUNTY Industrial Development Corporations and/or other CITY/COUNTY Affiliates, the general purpose of which is to encourage private development, in the ordinary course of establishing tax freeze programs, tax incentive programs, PILOT programs and other similar economic programs aimed at encouraging private development.

Also relevant to the current dispute, the Arena Agreement defines "Competing Facility" as follows:

> ***"Competing Facility"*** means any now existing or new indoor or covered sports or entertainment arena, indoor or covered performance facility or other indoor or covered facility that (i) could compete with the [FedEx Forum] for the booking of any event, or (ii) has or will have a seating capacity of more than 5,000 persons and fewer than 50,000 persons; provided, however, the foregoing provisions shall not apply to any hotel ballrooms, movie theaters or convention and hotel facilities that are not designed or constructed to be able to accommodate or be used as venues for concerts, theatrical shows, public assemblies or sporting events.

---

[3] According to the complaint, Memphis Basketball acquired the Grizzlies from HOOPS, L.P. in 2012, at which time Memphis Basketball became the successor-in-interest to HOOPS. Therefore, although HOOPS actually executed the Arena Agreement, Memphis Basketball is still bound by it. The complaint also emphasizes that EDGE was not a party to the Agreement.

- 3 -

In 2014, EPE undertook a project to redevelop Graceland, which consists of retail property owned and operated by EPE and is considered a tourist destination in the Memphis area. Specifically, EPE's plan to revitalize Graceland consisted of the construction of a 450-room hotel equipped with convention and concert facilities, construction of a theater, and upgrades to museum facilities and an archive studio ("Graceland Project"). To make the Graceland Project economically feasible, EPE applied for TIF through EDGE, requesting a property tax benefit whereby EPE would receive from the City and County fifty percent of the excess property taxes from the "plan area" (as defined by EPE's proposed economic plan) over the "base tax" (also as defined in EPE's proposed plan). EPE secured a recommendation from EDGE for its Graceland Project TIF, and thereafter, it received approval by both the City and the County.

In 2017, EPE presented to EDGE a supplemental plan to its original 2014 Graceland Economic Plan ("Supplemental Plan"). Therein, EPE requested approval of certain amendments to its project, including the construction of a 6,200-seat arena, among other things. To finance these amendments, which EPE refers to as the "next phase of The Graceland Project," the Supplemental Plan also included a request to have the existing TIF increased from fifty percent to sixty-five percent of excess property taxes over the base tax.

According to EPE, both the City and the County initially expressed support of the Supplemental Plan. However, EPE claims that Memphis Basketball contacted the City while the request for the Supplemental Plan was still pending and asserted that granting TIF for the proposed arena would violate the Non-Participation Provision of the Arena Agreement. EPE was unable to reach an agreement with the City and Memphis Basketball as to the issue of the alleged conflict between the requested TIF and the Agreement. Consequently, consideration of EPE's Supplemental Plan, which was scheduled for EDGE's September 2017 board meeting, was removed from the agenda. According to EPE, EDGE refused to move forward with the TIF approval process due to Memphis Basketball's objection.

In November 2017, EPE filed a complaint against Appellees in the Chancery Court for Shelby County for declaratory judgment, intentional interference with business relations, and other injunctive and equitable relief ("EPE I"). Each of the three Appellees filed a separate motion to dismiss, and by written order entered February 16, 2018, the trial court granted the motions, stating as follows:

> EPE has a legislative and governmental issue but seeks a judicial solution. EDGE, the Memphis City Council, and the Shelby County Commission must have the opportunity to address the language in the Arena

Use Agreement before this Court may entertain EPE's requests for relief. EPE is seeking this Court to issue a declaratory judgment that the Non-Participation Provision has a "Carve-Out" Exception allowing EPE to proceed with the expansion of the Graceland Project. To be clear, this Court makes no ruling as to the correct interpretation of the Non-Participation Provision of the Arena Use Agreement.

In essence, the underlying issue is one of tax divergence, which is a matter for the legislative branch of government in cooperation with the executive branch of government, since the executive branch has the sole authority to contract on behalf of the County under Shelby County's charter. Before this Court should consider the issue, EPE must have EDGE formally rule that they have rejected the Supplemental Plan and that the City Council and County Commission formally deny EPE's appeal of EDGE's decision. Pulling the hearing from the agenda is not a ruling against EPE.

Further, while EPE alleges generally that Memphis Basketball strong-armed EDGE and the other Defendants in such a way that made it impossible for EPE to move forward, the Court finds that Defendants' actions, and specifically Memphis Basketball's actions, were completely within their constitutional rights to raise. The threat to sue and asserting alleged contractual rights are protected rights.

Therefore, since EPE has not exhausted its administrative remedies, EPE lacks standing to bring this matter before the Court and all three motions to dismiss are hereby GRANTED in their entirety. All four claims of EPE are dismissed. There being no other claims in this matter before the Court, this is a final order regarding dismissal due to lack of standing based upon the pleadings filed.

Thereafter, on March 7, 2018, the City filed a motion to alter or amend the trial court's order pursuant to Tennessee Rule of Civil Procedure 59.04 asserting that there were no administrative remedies available to EPE nor was there a right to judicial review of EDGE's decision regarding a TIF application.[4] The City asked the court to amend its order

---

[4] We recognize that neither the motion to alter or amend nor the trial court's order in EPE I was included in EPE's complaint in the present case. As discussed further below, when considering a Rule 12.02 motion to dismiss, as we are on appeal in this case, "matters outside the pleadings should not be considered in deciding whether to grant the motion." *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696

accordingly. EPE did not file a response to the Rule 59.04 motion, nor did it appeal the trial court's order.

On April 5, 2018, following a written request by EPE, the EDGE board voted to conditionally recommend approval of the Supplemental Plan to the City and County, including the accompanying TIF increase. As memorialized in its written resolution, EDGE's approval was conditioned on either (1) a final, binding, non-appealable court order that EPE's proposed arena does not violate the Arena Agreement, or (2) a binding agreement by the parties to the Arena Agreement that EPE's proposed arena may be constructed and not violate the Agreement. The following month, on May 8, 2018, the City Council declined to vote on the Supplemental Plan. On June 4, 2018, however, the County Commission voted to conditionally approve EDGE's recommendation, adopting the same contingency included in EDGE's resolution. Eight days later, on June 12, 2018, the City voluntarily withdrew its Rule 59.04 motion to alter or amend the trial court's order in EPE I.

On June 29, 2018, EPE filed a second complaint in the Shelby County Chancery Court from which this appeal arises ("EPE II"). In contrast to EPE I, the complaint in EPE II sought only a declaratory judgment that approving the Supplemental Plan's TIF does not violate the Arena Agreement in order to satisfy the contingencies to EDGE's and the County Commission's conditional approvals. Again, the Appellees filed three separate motions to dismiss the complaint. In a January 15, 2019 order, the trial court granted the motions to dismiss, concluding that EPE lacked standing to bring the second complaint. EPE timely appealed the trial court's order.

In a divided opinion, the Court of Appeals affirmed the trial court's decision to dismiss the complaint in EPE II. *Elvis Presley Enterp., Inc. v. City of Memphis*, No. W2019-00299-COA-R3-CV, 2019 WL 7205894, at *7 (Tenn. Ct. App. Dec. 26, 2019), *perm. app. granted* (Tenn. July 21, 2020). The majority opinion concluded that the second

---

(Tenn. 2002). However, "[t]here are exceptions . . . . 'Numerous cases . . . have allowed consideration of matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned.'" *Indiana State Dist. Council of Laborers v. Brukardt*, No. M2007-02271-COA-R3-CV, 2009 WL 426237, at *8 (Tenn. Ct. App. Feb. 19, 2009) (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure, Civil* § 1357, p. 376 (3d ed. 2004)). Moreover, this Court has previously stated that "[w]hile parties asserting a res judicata defense may introduce a copy of the entire record of the prior proceedings to support their motion to dismiss, they are required to introduce only those portions of the record that are necessary to establish the application of the doctrine of res judicata." *Jackson v. Smith*, 387 S.W.3d 486, 492 n.10 (Tenn. 2012). Thus, consideration of these documents is appropriate.

complaint was barred by res judicata, and therefore declined to address the issue of standing. *Id.* Judge J. Steven Stafford filed a separate dissenting opinion in which he concluded that res judicata should not bar EPE's second complaint. *Id.* at \*8 (Stafford, J., dissenting). Judge Stafford expressed that he would have proceeded to consider whether the trial court correctly dismissed EPE's complaint for lack of standing. *Id.* at \*11.

We granted the ensuing application for permission to appeal to consider whether the Court of Appeals, relying on res judicata, properly affirmed the trial court's dismissal of EPE's complaint.

## II. STANDARD OF REVIEW

This is an appeal from the trial court's grant of a motion to dismiss for failure to state a claim. Our review of a dismissal for failure to state a claim under Rule 12.02(6) of the Tennessee Rules of Civil Procedure requires us to take the allegations in the complaint as true. *Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 857 (Tenn. 2002). A motion filed under Rule 12.02(6) tests "only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence." *Webb v. Nashville Area Habitat for Human., Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011). By filing their motions to dismiss, the Appellees effectively "admit[ted] the truth of all of the relevant and material allegations contained in the complaint, but . . . assert[ed] that the allegations fail to establish a cause of action." *Leach v. Taylor*, 124 S.W.3d 87, 90 (Tenn. 2004). As such, "courts should grant a motion to dismiss only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Crews*, 78 S.W.3d at 857. On appeal, we review the "trial court's decision to dismiss a petition for failure to state a claim . . . de novo with no presumption of correctness." *Metro. Gov't of Nashville v. Bd. of Zoning Appeals of Nashville*, 477 S.W.3d 750, 754 (Tenn. 2015) (citing *Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999)).

## III. ANALYSIS

"The doctrine of res judicata or claim preclusion bars a second suit between the same parties or their privies on the same claim with respect to all issues which were, or could have been, litigated in the former suit." *Jackson v. Smith*, 387 S.W.3d 486, 491 (Tenn. 2012) (citing *Creech v. Addington*, 281 S.W.3d 363, 376 (Tenn. 2009); *Richardson v. Tenn. Bd. of Dentistry*, 913 S.W.2d 446, 459 (Tenn. 1995)). "It is a 'rule of rest,' and it promotes finality in litigation, prevents inconsistent or contradictory judgments, conserves judicial resources, and protects litigants from the cost and vexation of multiple lawsuits."

*Id.* (citation omitted) (citing *In re Estate of Boote*, 198 S.W.3d 699, 718 (Tenn. Ct. App. 2005); *Sweatt v. Tenn. Dep't of Corr.*, 88 S.W.3d 567, 570 (Tenn. Ct. App. 2002)).

> The party asserting a defense predicated on res judicata or claim preclusion must demonstrate (1) that the underlying judgment was rendered by a court of competent jurisdiction, (2) that the same parties or their privies were involved in both suits, (3) that the same claim or cause of action was asserted in both suits, and (4) that the underlying judgment was final and on the merits.

*Jackson*, 387 S.W.3d at 491 (citing *Lien v. Couch*, 993 S.W.2d 53, 56 (Tenn. Ct. App. 1998); *Lee v. Hall*, 790 S.W.2d 293, 294 (Tenn. Ct. App. 1990)). In the case before us, we focus on whether the trial court's dismissal of EPE I was an adjudication on the merits.

Our courts have recognized that "[a]s a general matter, a lawsuit filed before the exhaustion of available administrative remedies is subject to dismissal," but such dismissal "is, of course, not a decision on the merits for the purposes of res judicata." *Pendleton v. Mills*, 73 S.W.3d 115, 129 (Tenn. Ct. App. 2001).[5] This position is "consistent with the federal rule that the dismissal of an action on the ground of failure to exhaust administrative remedies is not on the merits" for purposes of res judicata. *Heath v. Cleary*, 708 F.2d 1376, 1380 n.4 (9th Cir. 1983) (citing authority); *see also* 18A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure Jurisdiction* § 4436 (Edward H. Cooper 3d ed. Oct. 2020 Update) ("[C]laim preclusion is not proper, following dismissal on grounds of primary jurisdiction or failure to exhaust administrative remedies, or following a decision that simply remands a case for further administrative proceedings.").

The trial court here, in part, couched its dismissal of EPE I based on a lack of standing. However, the trial court made clear that ultimately it was dismissing EPE I based on a failure to exhaust administrative remedies, specifically stating that "since EPE has not exhausted its administrative remedies, EPE lacks standing." The trial court further stated that before it "should consider the issue, EPE must have EDGE formally rule that they have rejected the Supplemental Plan and that the City Council and County Commission formally

---

[5] The court in *Pendleton v. Mills,* 73 S.W.3d 115, 129-30 (Tenn. Ct. App. 2001), reasoned that "a lawsuit filed before the exhaustion of available administrative remedies is subject to dismissal on the ground that it is not yet ripe for adjudication." However, we have explained that exhaustion and ripeness are complementary, yet distinct, doctrines. *See Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 838 n.5 (Tenn. 2008). Regardless, the *Pendleton* court correctly concluded that a dismissal for failure to exhaust administrative remedies does not constitute an adjudication on the merits for purposes of res judicata.

deny EPE's appeal of EDGE'S decision." The trial court also emphasized that it was not ruling on the merits of the underlying case, stating "[t]o be clear, this Court makes no ruling as to the correct interpretation of the Non-Participation Provision of the Arena Use Agreement."[6]

Appellees have argued that the dismissal of EPE I was an adjudication on the merits under Tennessee Rule of Civil Procedure 41.02(3), which states:

> [u]nless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this Rule 41, other than a dismissal for lack of jurisdiction or for improper venue or for lack of an indispensable party, operates as an adjudication upon the merits.

As just discussed, however, our courts have recognized that a dismissal for failure to exhaust administrative remedies is not an adjudication on the merits for purposes of res judicata, and the trial court's order made clear that it was dismissing the case for failure to exhaust administrative remedies and was not ruling on the merits of the underlying case. Thus, the trial court's order sufficiently stated that its order of dismissal was not an adjudication on the merits for purposes of Rule 41.02(3). [7]

Appellees have further argued that even if a dismissal for failure to exhaust administrative remedies is generally not an adjudication on the merits, an exception applies here because EPE completed the administrative process prior to the entry of final judgment in EPE I and should have sought judicial review in EPE I by filing a motion under Tennessee Rules of Civil Procedure 59.04 or 60 rather than filing a second complaint. Appellees rely on *Regions Fin. Corp. v. Marsh USA, Inc.*, 310 S.W.3d 382, 402 (Tenn. Ct. App. 2009), in which the Court of Appeals affirmed the entry of summary judgment in favor of defendants on res judicata grounds, determining that the action was precluded by the entry of summary judgment in a prior federal action. In doing so, the Court of Appeals determined that the plaintiff could have, with due diligence, presented the issues raised in the state action in the previous federal action through a Federal Rule of Civil Procedure

---

[6] EPE emphasizes that the trial court also stated in its oral ruling "[t]his is not a ruling on the merits of the interpretation of the lease." It is well settled that trial courts speak through their written orders, not through oral statements contained in transcripts. *Williams v. City of Burns*, 465 S.W.3d 96, 119 (Tenn. 2015). Nevertheless, we find the trial court's oral statement entirely consistent with its written order.

[7] We take no position regarding whether the trial court was correct in dismissing EPE I for a failure to exhaust administrative remedies. For our purposes, it is clear that was the basis of the trial court's decision, and that decision was not appealed.

- 9 -

60(b) motion. *Id.* at 394-96. *Regions*, however, is distinguishable because in that case the Court of Appeals determined that the entry of summary judgment in the federal court was an adjudication on the merits, explaining that a motion for summary judgment "goes directly to the merits of the litigation." *Id.* at 398 (quoting *Anderson v. Rayner*, No. W2004-00485-COA-R3-CV, 2005 WL 3543682, at *56 (Tenn. Ct. App. Dec. 28, 2005)). Here, in contrast, the trial court's order in EPE I was not an adjudication on the merits. The other authority relied on by Appellees is similarly distinguishable. *See Creech v. Addington*, 281 S.W.3d 363, 378 (Tenn. 2009) (order of dismissal was an adjudication on the merits); *Gerber v. Holcomb*, 219 S.W.3d 914, 918 (Tenn. Ct. App. 2006) (consent judgment operated as an adjudication on the merits); *Snyder v. Yonkers Pub. Sch. Dist.*, 315 F.Supp.2d 499, 502 (S.D.N.Y. 2004) (dismissal with prejudice for failure to comply with discovery orders was a judgment on the merits); *SupplyOne, Inc. v. Triad Packaging, Inc.*, No. 13-3811, 2014 WL 3676524, at *4 (E.D. Pa. July 24, 2014) (whether there was a final judgment on the merits in a prior suit was not disputed). We need not consider whether it would have been procedurally appropriate for EPE to file a motion under Tennessee Rule of Civil Procedure 59.04 or 60 because the absence of such a motion does not convert the trial court's dismissal of EPE I for failure to exhaust administrative remedies into an adjudication on the merits. In the absence of an adjudication on the merits in EPE I, the doctrine of res judicata simply does not apply.

Having determined that EPE II is not barred by res judicata, the parties invite us to address whether the trial court erred in dismissing EPE II for lack of standing, an issue that was pretermitted by the holding of the Court of Appeals. We decline to do so and remand to the Court of Appeals for consideration of the standing issue. *See, e.g.*, *Moss v. Shelby Cnty. Civ. Serv. Merit Bd.*, 597 S.W.3d 823, 834 (Tenn. 2020) (remanding to the Court of Appeals for consideration of the issues pretermitted by its decision); *StarLink Logistics Inc. v. ACC, LLC*, 494 S.W.3d 659, 672 (Tenn. 2016) (same).

## IV. CONCLUSION

For the foregoing reasons, we hold that the dismissal of EPE I for failure to exhaust administrative remedies did not constitute an adjudication on the merits for purposes of res judicata. Accordingly, the judgment of the Court of Appeals is reversed. We remand the case to the Court of Appeals for consideration of the pretermitted issue of standing. The costs of this appeal are taxed to Appellees, City of Memphis, Shelby County, Tennessee, and Memphis Basketball, LLC, for which execution may issue if necessary.

_____
ROGER A. PAGE, JUSTICE